**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Douglas A. Kelley, in his capacity as the PCI Liquidating Trustee of the PCI Liquidating Trust, | ) ) ) ) | No. 1:18-cv-08394 |
| Judgment Creditor, | ) ) | Judge John J. Tharp, Jr. |
| v. | ) ) ) | |
| Capital Strategies Fund Ltd. n/k/a Barrington Capital Group Limited, | ) ) ) ) | |
| Judgment Debtor. | ) | |

## MEMORANDUM OPINION AND ORDER

This action is brought by Douglas Kelley, the Trustee for victims of the Petters Ponzi scheme, to enforce a judgment against Capital Strategies Fund, Ltd. ("the Fund" or "the Judgment Debtor"), one of the entities that invested in the scheme and withdrew profits before its collapse. The Trustee seeks a judgment against the Fund's former director, Steven G. Stevanovich. claiming that he embezzled nearly two million dollars from the Fund and spent it on fine wine and spirits, and is thus indebted to the Judgment Debtor, and, by extension, the victims of the scheme, who have a claim on the assets of the Fund. For the reasons discussed below, the Court agrees and orders Stevanovich to return $1,948,670.79 to reduce the outstanding judgment against the Fund.

## BACKGROUND

This action for turnover is but one ripple from the tsunami of litigation that has followed in the wake of the Petters Ponzi scheme. On October 6, 2008, Judge Montgomery of the District of Minnesota appointed Douglas A. Kelly (the "Trustee") over Petters Group, Inc., one of the entities employed to perpetrate the Ponzi scheme.[1] The Trustee represents the interests of the

---

[1] Declaration of Sarah Reidl, Ex A., Notice of Hearing and Motion to Approve the Settlement Entered into by and Among Douglas A. Kelley, as the Chapter 11 Trustee, and Certain

victims of Mr. Petters' $40 billion scheme. Turnover Mot. 1. ECF No. 31. In connection with his duties, the Trustee pursued the Judgment Debtor in adversary proceedings before the United States Bankruptcy Court for the District of Minnesota to recover the profits that the Judgment Debtor reaped from the Petters Ponzi scheme. *Id*. at 4. The Judgment Debtor did not appear in that proceeding, so the Bankruptcy Court entered its default on October 25, 2012. *Id.* On April 7, 2015 the bankruptcy court granted the Trustee's motion for default judgment, entering judgment the same day. *See* ECF No. 1.

On December 1, 2018, the Trustee registered that judgment in the Northern District of Illinois, *see* ECF Nos. 1-2. He then commenced this supplementary proceeding against Stevanovich by serving him with a Citation to Discover Assets according to the procedure prescribed by Illinois law, 735 ILCS 5/2-1402(a), which governs the execution of this judgment in this federal court. Fed. R. Civ. Proc. 69(a)(1). The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.[2]

The Trustee contends that, between 2006 and 2008, Stevanovich used $1,948,670.79 of the Judgment Debtor's funds to buy high-end wine and spirits and have them shipped out of the country to his residence in Switzerland. Stevanovich argues in response that the Judgment Debtor

---

Defendants in the Adversary Proceeding Captioned *Kelley v. Westford Special Situations Master Fund, L.P. et al* at 2-3, October 2, 2014, ECF No. 48-3.

[2] The Court had its doubts regarding its subject matter jurisdiction over this supplementary proceeding and elicited briefing from the parties on this front. ECF No. 64. The Trustee filed a statement clarifying that the Court has diversity jurisdiction. Jurisdictional Statement, ECF No. 65. Mr. Stevanovich is a citizen of Illinois, as demonstrated by his counsel's statement in a June 18, 2019 hearing: "Mr. Stevanovich is not going anywhere. He lives in Chicago. He's got children who live in Chicago... He's not leaving the state let alone the country." Jurisdictional Statement at 9. The Trustee was domiciled in Minnesota at the time this action was filed. *Id.* at 6; *RTP LLC v. ORIX Real Estate Capital, Inc.*, 827 F.3d 689, 691 (7th Cir. 2016) ("When the trustee sues . . . the trustee's citizenship matters."). The amount in controversy far exceeds $75,000. Stevanovich did not respond to this jurisdictional inquiry despite having received an extension to file his response.

has not met his burden under Illinois law to demonstrate that he is indebted to the Judgment Debtor under a theory of embezzlement. In support, he points to a byzantine chain of transfers and the eventual sale of the wine at auction, which he argues absolves him of liability here.

## DISCUSSION

Federal Rule of Civil Procedure 69(a) provides that the post-judgment procedure on execution is governed by "the procedure of the state where the court is located." In Illinois, such procedures are governed by 735 ILCS 5/2-1402. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 622 (7th Cir. 2010). This statute provides that judgment creditors are "entitled to prosecute citations to discover assets for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor[.]" 735 ILCS 5/2-1402(a). Courts can compel third parties who are indebted to the judgment debtor "to deliver up any assets so discovered," including in instances when a judgment debtor's assets "are held under such circumstances that in an action by the judgment debtor he or she could recover them in specie or obtain a judgment for the proceeds or value thereof as for conversion or embezzlement." ILCS 5/2-1402(c)(3). There is no requirement that the funds were moved to defeat transfer or that the assets remain in the third-party's possession; the relevant inquiry is whether the third party is indebted to the judgment creditor. *Bentley v. Glenn Shipley Enterprises*, 248 Ill. App. 3d 647, 653 (1993). If so, then the judgment creditor may recover "as if in the shoes of" the judgment debtor. *Id*; *see also West Ben Mut. Ins. Co. V. Belmont State Corp.*, 2010 WL 3700834 *5 (N.D. Ill. 2010). The judgment creditor has the burden of showing that the citation respondent has assets of the judgment debtor. *Kauffman v. Wrenn*, 2015 IL App (2d) 150285 ¶ 26 (2015).[3]

---

[3] The Court has found no authority establishing the standard of proof that applies in a supplemental proceeding under 5/2-1402(c)(6). Stevanovich contends (Response at 11) that the clear and convincing evidence standard applies, but the criminal case cited has nothing whatsoever to do with the applicable standard of proof in a supplemental turnover proceeding under Illinois

First, the Court rejects Stevanovich's arguments that the underlying judgment is unenforceable and this proceeding is untimely. Next, the Court addresses the parties' accounts of the events, and the evidence supporting those accounts, and finds the Trustee has carried his burden to show that Stevanovich is indebted to the judgment debtor on a theory of embezzlement.

## I.    Enforceability of the Default Judgment Entered Against Capital Strategies Fund, Ltd.

Stevanovich argues that the Trustee cannot pursue supplementary proceedings against him because the default judgment entered against Capital Strategies Fund, Ltd. is not a final and enforceable judgment. Under Illinois Supreme Court Rule 304(a), which Stevanovich says governs the enforceability of the Bankruptcy Court's judgment for the purposes of supplementary proceedings, a judgment as to fewer than all claims or parties must contain an express finding that "there is no just reason for delaying either enforcement or appeal or both." 155 Ill.2d R. 304(a). Though the order directing entry of default judgment does contain such an express finding, Lavine Decl., Ex 8, ECF No. 33-1, the default judgment itself does not, ECF No. 1, prompting Stevanovich to assert that the judgment is therefore unenforceable and that the Motion for Turnover must be quashed.

The Trustee responds that the relevant procedural rule here is Federal Rule of Civil Procedure 54(b), not Illinois Supreme Court Rule 304(a). Rule 54(b) provides that "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all… parties… if the court expressly determines that there is no just reason for delay." The

---

law. Stevanovich's citation to the case as support for its claim about the standard of proof is inexplicable. In the absence of any authority to the contrary, the Court concludes that the standard of proof applicable in any state law claim for conversion would apply—namely, preponderance of the evidence. *See Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 806 N.E.2d 280, 286 (Ill. App. 2d. Dist. 2004).

Trustee directs the Court to Seventh Circuit cases arising in this statutory context where courts applied Rule 54(b) instead of Illinois Supreme Court Rule 304(a). *See Dexia*, 629 F.3d at 618 (applying Rule 54(b) to find that the District Court presiding over supplementary proceedings had rendered a non-final default judgment final as to the Rogan defendants because it dismissed the remaining defendants due to lack of complete diversity); *Central Laborers' Pension Fund v. AEH Contsr., Inc.*, 2015 WL 5462139 (finding that *nunc pro tunc* Rule 54(b) certification retroactively made a nonfinal order final.) And the Trustee says that the requirements of Rule 54(b) are satisfied by the Bankruptcy Court's finding in its Order Granting Trustee's Application for Entry of Default that "there is no just reason for delay of the entry of judgment against the Defendant Capital Strategies Fund, Ltd., n/k/a Barrington Capital Group Ltd. as its default does not implicate the possibility of a piecemeal appeal." ECF No. 33-1, Ex 8.

The Court agrees that Federal Rule 54(b) governs the enforceability of the Bankruptcy Court's judgment in federal District Court. Stevanovich's argument amounts to this: the judgment itself, rather than the order directing entry of judgment, did not contain the express finding and is unenforceable. Nothing in Rule 54(b) requires that the magic words appear in the judgment itself; the Rule provides that "the court may direct entry of final judgment… only if the court expressly determines that there is no just reason for delay." The Bankruptcy Court made such an express finding here, so the judgment is final and enforceable. And even if Illinois Supreme Court Rule 304(a) applied here, that rule also requires only a "an express written finding that there is no just reason for delaying either enforcement or appeal or both." ILCS S. Ct. Rule 304(a). The rule also says that the "entry of the required finding shall be treated as the date of the entry of final judgment," suggesting that the key requirement here is the finding of enforceability, not whether

it appears in a judgment as opposed to an order directing entry of judgment. As such, the Court finds that the default judgment issued by the Bankruptcy Court is final and enforceable.

## II.      Statute of Limitations

Next, Stevanovich argues that the Trustee's supplementary action is not timely. First, he argues that this action is outside the scope of a supplementary proceeding because the Trustee seeks a determination that Stevanovich is personally liable for embezzlement. As such, he contends that the five-year statute of limitations for fraud applies rather than the seven-year statute of limitations for supplementary proceedings. According to Stevanovich, any embezzlement claim accrued between April 26, 2006 and July 23, 2008, when he purchased the wine, and thus expired between 2011 and 2013, before the Trustee secured the default judgment in the bankruptcy court. Resp. 12, ECF No. 48.

To make his argument that this is an action outside the permissible scope of supplementary proceedings, Stevanovich clings to language in the Seventh Circuit's opinion in *Dexia*, where the Court of Appeals explained: "As long as the action seeks the judgment debtor's assets and ***does not concern personal liability***, it falls within the scope of a supplemental proceeding." *Dexia*, 629 F.3d at 624. According to Stevanovich, the Trustee is attempting hold Stevanovich "personally liable" for embezzlement, placing this proceeding outside the scope of a supplementary proceeding.

Stevanovich's argument that this is an impermissible attempt to impose personal liability confuses the relevant question. The relevant inquiry is whether an action brought in supplementary proceedings "concerns the assets of the judgment debtor." *Kennedy v. Four Boys Labor Service, Inc.*, 664 N.E.2d 1088, 1092-93 (Ill. App. 2d Dist. 1996). The court in *Kennedy* held that an action brought in supplementary proceedings pursuant to Illinois' Fraudulent Transfer Act was proper because it "attempts to avoid the transfer and seeks the actual assets transferred." *Id*. at 369. So

too here. Conversely, the court rejected the plaintiff's attempt to recover from the third party under the Business Corporation Act because that action would "hold a corporate director personally liable for damage sustained by a creditor and is not concerned with the actual assets of the judgment debtor." *Id.* at 366. That is not the case here: The Trustee's claims concerns the assets of the judgment debtor and is not an attempt to impose "personal liability independent of the debtor's assets." *Id.*

The Illinois statute governing supplementary proceeding indicates that this action is securely within the scope of supplementary proceedings: it allows a court to "compel any person cited, other than the judgment debtor, to deliver up any assets" which the judgment debtor "could recover… as for conversion or embezzlement." 735 ILCS §§ 5/2-1402(c)(1)-(6). The statute thus provides that the Trustee's effort to recover from Stevanovich is within the scope of supplementary proceedings.

Moreover, the Seventh Circuit has rejected application of the same statute of limitations that Stevanovich urges here, 735 ILCS 5/13-205. *See Dexia*, 629 F.3d at 627. That statute provides:

> Except as provided in Section 2–725 of the "Uniform Commercial Code", approved July 31, 1961, as amended, and Section 11–13 of "The Illinois Public Aid Code", approved April 11, 1967, as amended, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

The Court in *Dexia* held that an action for constructive trust in supplementary proceedings is not subject to this five-year statute of limitations because the action was "otherwise provided for" by statute. *Id.* The proceedings in *Dexia*, like here, "were initiated to enforce and satisfy a previously-obtained money judgment. Thus, the statute specifically governing such proceedings determines the rights and liabilities of the parties," namely 735 ILCS 5/12-108(a) and its seven-

year statute of limitations.[4] Accordingly, this action is timely, as the limitations period does not expire until April 7, 2022 (seven years following entry of the bankruptcy court judgment).

## III.    Stevanovich's Indebtedness to the Judgment Debtor on a Theory of Embezzlement

Under Illinois law, embezzlement consists of 1) a special relationship with the victim, 2) conversion of property to the embezzler's own use, and 3) an intent to embezzle. *See Omni-Star Expo Ltd. v. Chrobak*, 2019 IL App (2d) 170759-U *7 (2018); *People v. Curoe*, 97 Ill. App. 3d 258, 273 (1981) ("Embezzlement consists of the accused's conversion of another's funds in his possession in a fiduciary capacity, and the crime is complete when there is a fraudulent conversion without the owner's consent."). The intent to embezzle "is necessarily inferred from the voluntary commission of an act, the inevitable effect of which is to deprive the true owner of the property and appropriate it to the defendant's own use." *Id.* at 274.

The first element is satisfied by Stevanovich's status as the sole director of Capital Strategies Fund, Ltd. During the time he made the wine purchases, Stevanovich was Capital Strategies Fund, Ltd's sole director and was an authorized signatory for its Credit Suisse account. Lavine Decl., Ex. 1 at 181:20-182:18, ECF No. 33-1.

As for the second and third elements, the Trustee adduced evidence showing that, between April 2006 and July 2008, Stevanovich placed orders with Richard Klein, a principal of R&A Vintners. *See* Lavine Decl., Ex. 9 ¶¶ 2-4. Mr. Klein declares that he sold wine and spirits to

---

[4] Stevanovich relies on one case in support of his argument that a different statute of limitations should apply. In *John Isfan Const., Inc. v. Longwood Towers, LLC*, 2016 IL App (1st) 143211,the appellate Court, in reciting the procedural history of the case before it, noted that one trial court judge had applied the statute of limitations for unlawful distributions in a supplementary proceeding. *Id.* at ¶ 28.  Plaintiff says that this "holding was not disturbed on appeal," Mot. to Dismiss 11, but that trial court order was not under review in *Ifsan*—the appellate court was reviewing a later order, in a different proceeding, to vacate default judgment. Plaintiff's only authority for applying a different statute of limitations is thus nothing more than an echo, without any reasoning or explanation, of a trial court's decision to do so.

Stevanovich, that Mr. Stevanovich personally placed the orders, and that he sent Stevanovich the invoices. *Id.* at ¶¶ 3-4. Further demonstrating that the wine was for Stevanovich's personal use, the vintner states that "[t]he wine and spirits were shipped by third party vendors to Mr. Stevanovich's home in Switzerland." *Id.* The payment for those invoices, however, did not come from Mr. Stevanovich, but rather from Capital Strategies Fund's Credit Suisse account. Turnover Mot. at 7, ECF No. 31 (summarizing bank records contained in Lavine Decl., Ex. 11 1-10, ECF No. 33-1.) This is competent evidence of embezzlement, *see Sullivan v. Ross Mechanical, Inc.*, 2012 WL 2254203, *3-4 (N.D. Ill. 1996), and Stevanovich disputes none of these facts.

Instead, in his response brief and accompanying declaration, Stevanovich describes a series of transactions that he says demonstrates he is not indebted to the Judgment Debtor.[5] Stevanovich Decl., Ex. 1 to Resp. to Mot. to Dismiss, ECF No. 48-1. Stevanovich states he bought the wine at the direction of Capital Strategies Fund, Ltd.'s "sole investor," a relative of his wife's, as an investment strategy.[6] Stevanovich then arranged to have the wine stored in "a dedicated area within [his own] wine cellar," Stevanovich Decl. at ¶ 11, "[i]n an attempt to secure maximum profitability for the investments and avoid additional expenses." Resp. at 4. In July 2009, in response to changed SEC regulations, Capital Strategies Fund began a liquidation process in order to move its domicile to the Cayman Islands. Stevanovich Decl. at ¶ 16. By the end of 2009, Stevanovich says, Capital

---

[5] Stevanovich expends too much energy arguing that Illinois law requires him to have the assets in his possession for turnover to be proper. That is wrong. *Bentley*, 248 Ill App. 3d at 652 (recognizing that a judgment creditor can recover funds from third parties even though the third parties "never had physical possession" of misappropriated funds.") The question is not where the assets are currently held, but whether the third party is indebted to the judgment debtor.

[6] Without seeking the Court's leave, Stevanovich filed a sur-reply. ECF No. 54. In that sur-reply, he clarifies that the mysterious character referred to as the "sole investor" throughout his response brief is, in fact, one of his wife's relatives. *See* Defendant's Reply Brief 7, ECF No. 54; Lavine Decl., Ex 1 147:4-20 (identifying the sole investor as "the Emami Family;" elsewhere in the deposition, Lavine Decl, Ex. 1 51:11-51:14, he identifies Amir Emami as his brother-in-law and Masoud Emami, 55:1-6, as Amir's cousin).

Strategies Fund, Ltd. had transferred all interest in the wine and spirits to an entity called TGG Capital Ltd., again on behalf of the sole investor "as a redemption." *Id.* ¶ 17. All of Capital Strategies Fund, Ltd.'s other assets were transferred to Capital Strategies Global Fund, L.P. ¶ 18. Capital Strategies Fund, Ltd. changed its name to Barrington Capital Group Ltd. and was liquidated in 2011. ¶ 20. In 2012, some three years after Capital Strategies Fund, Ltd. had transferred the interest in wine to the sole investor, this investor arranged for the sale of the wine and spirits at auction through Christie's. ¶ 23. The funds were received in escrow in several stages by Columbia Corporate Services, Inc. and were transferred to an entity called "Butterfield" on account for TGG Capital, Ltd. ¶¶ 24-26.

There are several problems with Stevanovich's story. As an initial matter, the tale is internally inconsistent; Stevanovich fails to explain why, if the Fund transferred all interest in the wine to TGG Capital in 2009, Stevanovich was receiving documentation and communications regarding the disposition of the wine and the transfer of the proceeds from the sale of the wine at Chrsitie's three years later.

More significantly, Stevanovich's detailed account in this proceeding stands in stark contrast to Stevanovich's professed ignorance of the same events in prior deposition testimony during the adversary proceeding before the United States Bankruptcy Court for the District of Minnesota:

> Q: Are you familiar with an entity R&A Vintners?
> **Stevanovich: What is it?**
>
> Q: R&A Vintners?
> **Stevanovich: It doesn't come to mind.**
>
> Q: Do you know if that's a wine selling establishment?
> **Stevanovich: I don't. I don't recall that name. Vintner sounds like something to do with wine.**

Declaration of Adam Levine, dated July 2, 2019 ("July 2019 Lavine Decl."), Ex. 1 at 182:25-

183:7. When counsel for the Trustee showed Stevanovich bank statements detailing payments by

Capital Strategies Fund to R&A Vintners, Stevanovich continued to disclaim knowledge:

> Q: So do you remember why Capital Strategies would
> be paying RA Vintners $75,991.97?
> **Stevanovich: I don't.**
>
> Q: Is that in any way related to the statements from Mr. Mouttet
> about you purchasing wine for him?
> **Stevanovich: I didn't purchase wine with Capital Strategies.
> I used my own personal money**
> **….**
>
> Q: There's an entry on March 23, 2007.
> **Stevanovich: I see.**
>
> Q: It shows a payment again to RA Vintners for $497,801.79; correct?
> **Stevanovich: I see it**.
>
> Q: Does that refresh your recollection about payments to R&A Vintners?
> **Stevanovich: No.**

July 2019 Lavine Decl., Ex. 1 at 184:1-17. In light of this prior sworn testimony disclaiming any

recollection, the Trustee contends that the Court should entirely disregard the detailed story

Stevanovich tells now. And indeed, the Seventh Circuit has long held, in reviewing summary

judgment rulings, that "affidavits in conflict with prior sworn testimony should be disregarded."

*Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000); *see also Unterreiner v.*

*Volkswagen of America, Inc.*, 8 F.3d 1206, 1210 (7th Cir. 1993), *overruled on other grounds by*

*Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) ("A party cannot claim a lack of general

knowledge about a subject and later make a statement which requires detailed knowledge about

the same subject."). Although this turnover motion is not a summary judgment motion and this

proceeding is distinct from the adversary proceeding in which Stevanovich professed no memory

of buying wine on behalf of the Judgment Debtor, the force of the point is not diminished: "A party

may not create a dispute of fact by contradicting his own earlier statements, at least without a plausible explanation for the sudden change of heart." *Richardson v. Bonds*, 860 F.3d 1427, 1433 (7th Cir. 1988).

Stevanovich offers no explanation, much less a plausible one, for the contradictions between his sworn testimony in the adversary proceeding denying memory of any transactions involving the purchase of wine by the Fund ("I didn't purchase wine with Capital Strategies. I used my own personal money") and his subsequent declaration detailing the Fund's investment in and disposition of almost $2 million dollars in fine wine. Omission of his dealings with R&A Vintners was certainly not likely to have been a function of merely faulty recollection. Consider the Capital Strategies Fund Ltd.'s Offering Memorandum. That document, while providing that it does "not restrict the type of investments the fund may make," describes the Fund's investment's focus on underperforming companies along with various types of debt and securities. Lavine Decl., Ex. 2 at 4, 7-9. The Memorandum does not list physical assets as an investment focus, much less fine Bordeaux. As the Trustee argues, it is unlikely that Stevanovich's memory would fail as to such a departure from the Fund's standard investment practices. This is all the more so given Stevanovich's current claim that the true buyer of the wine was the Fund's sole investor and the facts that Stevanovich does not dispute about his personal involvement in the purchase of the wine: he personally placed the orders with R&A Vintners, paid for it with the Fund's money, and shipped it to his home where he stored it in a dedicated area within his own wine cellar. All this is also to say nothing of Stevanovich's implausible claim that he served as an uncompensated bailee responsible for maintaining delicate and fragile assets valued at almost $2 million in order to hold down costs.

The Court is inclined to agree that Stevanovich cannot create a factual dispute by suddenly remembering the details of the wine purchases and transfers. However, given the distinct procedural posture in this case (this is a motion for turnover, not one for summary judgment) the Court will not entirely disregard Stevanovich's affidavit, but will consider this inconsistency as one factor alongside others that indicate it should be given negligible weight.

The bigger problem with Stevanovich's yarn is that he barely attempts to support it with documentary evidence. The documents he provides only relate to a small portion of his tale, and they serve only to further undermine his account. He provides escrow statements which only demonstrate that approximately $1.9 million dollars were transferred to TGG Capital "pursuant to the terms of the Escrow Agreement… among First Coast Financial Ltd, Steve G. Stevanovich, and Columbia Services, Inc." Rield Decl., Ex. F. at 3. The last party is the escrow agent; the first was one of Stevanovich's creditors. *See* Declaration of Adam M. Levine, dated August 29, 2019, Ex. A, ECF No. 53-1. The Trustee contends that, if it is true that the proceeds of the Christie's auction sale of the wine were put in escrow on behalf of TGG Capital, one would expect an escrow agreement between TGG Capital and Christie's. Reply 11. Yet the escrow agreement appears to be between Stevanovich and one of his creditors. At best, this fails to support Stevanovich's account; at worst, it provides additional support to the Trustee's argument that Stevanovich bought the wine and spirits for his personal benefit, and not as an investment strategy on behalf of an investor.

It is true, of course, that the Trustee has the burden of proof here, not Stevanovich. It is the Trustee's burden to present competent evidence to show that Stevanovich was the beneficiary of the Judgment Debtor's wine purchases and he has done so. In sum, the Trustee has produced a declaration from Mr. Klein which is undisputed and establishes that the vintner dealt with

Stevanovich personally and shipped the wine to Stevanovich's residence in Switzerland. Indeed, Stevanovich admits that he stored the wine in his own cellar. In addition, the Trustee has produced bank records showing that instead of using his own funds to pay for the wine, Stevanovich used funds belonging to the Judgment Debtor, of which he was sole Director, and over whose accounts he held signatory authority. Notwithstanding these facts, Stevanovich maintains that he was not the beneficiary of the Fund's wine purchases, but the materials he has offered in support of that claim do not suffice to create a dispute of fact that requires an evidentiary hearing to resolve.[7] Stevanovich's sworn testimony that he had no recollection of these events cannot be reconciled with his subsequent detailed account of the events that purports to show that everything he did was for the benefit of the Fund's sole investor. Indeed, that account, and the few records offered to support it, undermines rather than corroborates Stevanovich's tale. Accordingly, The Court finds that the Trustee has carried his burden to show, by a preponderance of the evidence, that Stevanovich is indebted to the Judgment Debtor on a theory of embezzlement.

\* \* \*

Accordingly, the Court grants the Trustee's motion for turnover, and orders Stevanovich to return $1,948,670.79 to reduce the outstanding judgment against Capital Strategies Fund, Ltd.

Date: September 8, 2021

John J. Tharp, Jr.
United States District Judge

---

[7] Stevanovich has not requested an evidentiary hearing in any event. Instead, he offers to file another affidavit to address any additional questions arising from the declaration he has already filed. It is clear, then, that Stevanovich anticipates a ruling on the papers.