**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Douglas A. Kelley, in his capacity as the PCI Liquidating Trustee of the PCI Liquidating Trust, | ) ) ) ) | |
| Judgment Creditor, | ) ) | No. 1:18-cv-08394 |
| v. | ) ) ) | Judge John J. Tharp, Jr. |
| Capital Strategies Fund Ltd. n/k/a Barrington Capital Group Limited, | ) ) ) ) | |
| Judgment Debtor. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Douglas Kelley, the Trustee for victims of the Petters Ponzi scheme, seeks to void a transfer from Compass Point Aviation Ltd. ("CPA") to the third-party defendant, Altemere FZCO ("Altemere") under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"). He argues that the transferred assets should be used to pay an outstanding judgment against the defendant, Steve G. Stevanovich. The Trustee filed a motion to preliminarily enjoin Altemere from disposing of the assets during the pendency of the litigation. Stevanovich passed away while the Trustee's motion was pending, ECF No. 275, and this Court requested additional briefing from the Trustee and Altemere on the effect of his death, if any, on the pending motion.

For the reasons explained below, the Trustee's motions for preliminary injunction and to set aside the allegedly fraudulent transfer are denied. Though this Court has subject matter jurisdiction over the case, and may have personal jurisdiction over Altemere, the Trustee cannot succeed on the merits of his claim. As such, Stevanovich's passing does not affect the outcome of these proceedings.

**<u>BACKGROUND</u>**

The Trustee has ardently sought payment from Stevanovich to recoup funds that Stevanovich, the former director of Judgment Debtor Capital Strategies Fund, Ltd., embezzled from the Fund. This Court's September 8, 2021 memorandum opinion contains a fuller accounting of this case's extensive procedural history. Relevant to the motions for preliminary injunction and to void an allegedly fraudulent transfer, however, are the events that occurred after this Court issued a turnover order against Stevanovich in the amount of $1,948,670.79. Mem. Op. 1, ECF No. 71. As of May 2025, Stevanovich had not paid any of that amount. Order 2, ECF No. 186. Stevanovich argued that he was unable to pay despite receiving $50,000 a month from a management fee paid to CPA. *Id.* Stevanovich was CPA's sole director and had signatory authority over its accounts. Mem. Op. 14. The management fee came from CPA's agreement with Compass Point Aviation Acquisitions Ltd. ("CPAA"). CPAA's three current directors are Masoud Emami,[1] Julie Maes, and Gankil Baek. Mem. Opp'n 1, ECF No. 265. Stevanovich was formerly a director of CPAA. *Id.* at 18. CPAA makes money by leasing a commercial aircraft to Emirates. *Id.* at 1.

In 2012, CPA and CPAA entered an Investment Management Agreement in which CPA agreed to provide "investment advice and services" in exchange for $50,000 a month. Inv. Mgmt. Agreement 1, 4, ECF No. 265 Ex. A. Indeed, CPA was created so it could be CPAA's Investment Manager. Mem. Opp'n 1. The $50,000 a month paid to CPA by CPAA went to Stevanovich, who testified to the following:

> I own Compass Point Aviation 100 percent myself, personally. So, this is my personal money to do with whatever I like, including my own personal expenses. It's as if someone paid a management fee to me from the funds. I can then do anything I want with that. I just want to make sure it's clear. This is not somebody else's money. This is my personal money.

---

[1] Masoud Emami is also Stevanovich's brother-in-law's cousin. Mem. Op. 9 n.6.

Decl. Igor Margulyan Ex. D 148:2–150:14, ECF No. 161-4. Because of Stevanovich's failure to comply with the turnover order despite his high monthly income, this Court held him in contempt and ordered him to pay the Trustee $33,000 a month from the monthly payment he received from CPA until the full amount had been paid. Order Directing Payments 1–2, ECF No. 228.

Stevanovich moved to vacate the payment order shortly after its issuance, saying that due to Stevanovich's health and personal legal issues,[2] CPA had stepped down as CPAA's Investment Manager. Mot. Vacate 1–2, ECF No. 229. And notably, the Investment Management Agreement between CPA and CPAA provides that CPA has the right to delegate all of its responsibilities as Investment Manager to a third party. Inv. Mgmt. Agreement 2. Because CPA was no longer the Investment Manager, Stevanovich argued, he did not have access to CPA's management fee. *Id.* at 3. Stevanovich's motion did not indicate who had taken over. As it turns out, on August 28, 2025, one week after this Court indicated Stevanovich would be required to pay the Trustee $33,000 monthly, CPA assigned its rights in the Investment Management Agreement, including all compensation, to a company called Altemere. Delegation Auth. & Assignment Rights 1, ECF No. 247-1. Delegation Auth. & Assignment Rights 1. Masoud Emami is Altemere's founder and director, and Julie Maes is Altemere's manager. Decl. Masoud Emami 5 ¶¶ 24–26, ECF No. 265 Ex. A. Altemere was incorporated under the laws of the United Arab Emirates on September 8, 2025, and maintains its only office in Dubai. *Id.* at 2–3 ¶¶ 24, 26; Margulyan Decl. Ex. A, ECF No. 246-1.

---

[2] Over the course of the proceedings in this matter, Stevanovich provided documentation of his dire health issues and, as noted, he passed away.

3

The Trustee moved to set aside CPA's transfer of rights to Altemere under the IUFTA. Mot. Set Aside Fraudulent Transfer 1, ECF No. 244. He also moved for a preliminary injunction prohibiting Altemere from using $33,000 of the monthly management fee. Mot. Prelim. Inj. 8, ECF No. 247. For the reasons discussed below, both motions are denied.

## **DISCUSSION**

A court must only grant a preliminary injunction if a plaintiff establishes "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). When determining if a plaintiff is likely to succeed on the merits, courts must "approach the record from a neutral and objective viewpoint, assessing the merits as . . . they are likely to be decided after more complete discovery and litigation." *Fourqurean v. Nat'l Collegiate Athletic Ass'n*, 143 F.4th 859, 866 (7th Cir. 2025) (citation removed).

If a court finds that the party seeking a preliminary injunction has no chance of success on the merits, it may also rule on the underlying motion. *See Chi. Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991) ("The preliminary injunction must be reversed because the Observer has no chance of success on the merits. Indeed, the City is entitled to judgment without further ado. . . . Once it becomes clear that additional proceedings are pointless, the court should bring the case to a close.").

### I. Subject Matter Jurisdiction

Before all else, this Court must assure itself of subject-matter jurisdiction to hear the claim. Altemere argues that there is no ancillary jurisdiction over the controversy with respect to Altemere because the Trustee seeks to "impose personal liability against Altemere for the investment-

management fees that CPAA pays Altemere for work that it performs," in violation of the Supreme Court's holding in *Peacock v. Thomas*. Mem. Opp'n 10.

In *Peacock*, the Supreme Court held that ancillary (now called supplemental) jurisdiction does not extend to "new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." 516 U.S. 349, 351 (1996). In *Peacock*, the plaintiff had secured a judgment against his former employer for ERISA violations. *Id.* When the plaintiff was unsuccessful in collecting the judgment from the employer, he sued an officer of the employer. *Id.* at 351–52. In that second suit, the district court pierced the corporate veil and entered judgment against the employer's officer. *Id.* at 352. But there was no ancillary jurisdiction over the second suit because "claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit." *Id.* at 355. That is so because "[i]n a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction." The Supreme Court did recognize that ancillary jurisdiction can extend to subsequent proceedings when necessary to enforce a judgment, like proceedings for attachment, mandamus, and garnishment. *Id.* at 356–57. The Supreme Court declined to extend that jurisdiction, however, to "impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357. Altemere seizes on that portion of the opinion, arguing that because the relief sought here is not of the type like attachment or mandamus, this court does not have jurisdiction to hold it liable for Stevanovich's debt.

Altemere's argument does not hold water. Unlike *Peacock*, this is not a separate proceeding. This Court has subject-matter jurisdiction over the parties in "the primary lawsuit,"

5

*id.* at 355, based on diversity of citizenship.[3] Mem. Op. 2. The Trustee is asserting his fraudulent transfer claim against Altemere in the ***same*** proceeding, meaning that the court has supplemental jurisdiction over the claim if it is "so related to claims in the action within such original jurisdiction that [it] form[s] part of the same case or controversy." 28 U.S.C. § 1367(a). The primary lawsuit is a supplemental proceeding to enforce a judgment from the United States Bankruptcy Court for the District of Minnesota. The Trustee sought payment from Stevanovich on the theory that Stevanovich was indebted to the judgment debtor. *See* Mot. Turnover, ECF No. 30. The fraudulent transfer claim against Altemere is premised on the Trustee's argument that the money this Court ordered Stevanovich to pay to satisfy the turnover order is rightly Stevanovich's. The action against Altemere therefore makes up the same case or controversy as the primary lawsuit, because it still seeks payment from Stevanovich to satisfy the bankruptcy court's judgment. Contrary to Altemere's argument, *Peacock* does not control, and this Court may properly exercise supplemental jurisdiction over the claim against Altemere.

## II. Personal Jurisdiction

Altemere also argues that this Court lacks personal jurisdiction over it. Federal courts in Illinois generally may exercise personal jurisdiction over those defendants who are subject to personal jurisdiction in Illinois state court. Fed. R. Civ. P. 4(k)(1)(A). Illinois's long arm statute permits personal jurisdiction to the full extent authorized by the federal Constitution, 735 ILCS

---

[3] The reason that the primary lawsuit here does not fit into *Peacock*'s description of ancillary jurisdiction over subsequent proceedings to enforce a judgment is because the original judgment was against Capital Strategies Fund Ltd., n/k/a Barrington Capital Group Ltd., not Stevanovich. Registration Foreign J. 4, ECF No. 1; *Rizvi v. Allstate Corporation*, 833 F.3d 724, 724–25 (7th Cir. 2016). This Court therefore asked the parties for supplemental briefing on its subject-matter jurisdiction, and the Trustee clarified that there was diversity of citizenship. Mem. Op. 2 n.2.

6

5/2-209(c),[4] which permits personal jurisdiction where it is "reasonable" and "does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).

The Trustee has the burden of demonstrating personal jurisdiction over Altemere. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The parties disagree over the standard the Trustee must meet. The Trustee argues that because there was no live testimony at the preliminary injunction hearing, the jurisdictional issue will be decided on the papers, meaning he need only make a prima facie showing of jurisdiction. Reply 16, ECF No. 266. At the preliminary injunction hearing, Altemere disputed the prima facie standard, instead stating that it believed the Trustee needed to meet a clear and convincing evidence standard. Altemere pointed out that the parties had submitted affidavits, which are considered testimony.

The Trustee is correct. The critical question is not whether testimony has been offered, but whether there has been an evidentiary hearing. Without an evidentiary hearing, the plaintiff need only make a prima facie case of personal jurisdiction. *Dixon v. Gatzke*, 790 F. Supp. 3d 679, 691 (N.D. Ill. 2025); *Tamburo*, 601 F.3d at 700. On that posture, courts also "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Tamburo*, 601 F.3d at 700.

---

[4] Illinois law also requires the exercise of jurisdiction to be permissible under the state constitution, but the Seventh Circuit has noted that Illinois courts have not explained what the difference might be between the state and federal constitutional standards. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019); *see also Brody v. Hoch*, 263 N.E.3d 594, 603 n.11 (Ill. App. Ct. 2024) ("Regarding personal jurisdiction over nonresident defendants, Illinois courts have found no 'substantive difference' between the due process clauses of the United States and Illinois Constitutions." (quoting *Russell v. SNFA*, 987 N.E.2d 778, 785 (Ill. 2013))). For that reason, this analysis focuses on the federal Constitutional standards.

Personal jurisdiction can be either general or specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Illinois courts have general jurisdiction over defendants who are "essentially at home" in the state. *Id.* at 358–59 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Corporations are "at home" in their place of incorporation and principal place of business. *Id.* at 359. Altemere is incorporated in Dubai and has its only office there. General jurisdiction is therefore untenable, and at any rate the Trustee does not argue that it applies.

A court has specific personal jurisdiction over a defendant when the plaintiff's claims "arise out of or relate to" the defendant's purposeful contacts with the forum state. *Ford Motor Co.*, 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)). The Trustee urges that this Court has specific jurisdiction under both the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), and the Seventh Circuit's decision in *SEC v. Homa*, 514 F.3d 661 (7th Cir. 2008). In *Calder*, the Supreme Court upheld California's exercise of personal jurisdiction against defendants involved in publishing a tabloid story where:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

*Id.* at 788–89. In applying *Calder*, the Seventh Circuit has emphasized that "'express aiming' remains the crucial requirement when a plaintiff seeks to establish personal jurisdiction under Calder." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*, 623 F.3d 440, 445–46 (7th Cir. 2010). That is, a defendant must have expressly aimed his conduct at the forum state for courts in that state to have personal jurisdiction over him. *Id.* The Trustee argues that by helping "frustrate collection on a judgment rendered" by this Court, Altemere expressly

8

aimed its conduct at Illinois. But Altemere could only have expressly aimed its conduct at Illinois if it actually ***knew*** about the judgment order from an Illinois court and intended to help Stevanovich avoid it.

The Trustee also argues that this Court has personal jurisdiction over Altemere pursuant to *Homa*, in which the Seventh Circuit held that "[n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum." *Homa*, 514 F.3d at 673 (quoting *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985)). Personal jurisdiction under *Homa* thus also hinges on Altemere knowing about the payment order.

This is, Altemere contends, a fundamental flaw in the Trustee's argument: he has not made a prima facie showing that Altemere knew about this Court's payment order. Mem. Opp'n 7–9. The Trustee points to the agreement between CPA and Altemere, which states that Stevanovich was facing "personal legal issues," to say that Altemere "must have had notice of the Payment Order." Fraudulent Transfer Mem. 13. The Trustee additionally notes that Stevanovich sent this Court's TRO to Julie Maes, Altemere's manager, and received no response. *Id.* He argues that "Ms. Maes certainly would have responded to Stevanovich's email attaching the TRO if she did not already know about the Payment Order," so the fact that she did not respond means that she already knew about the order when she received the TRO on November 3, 2025. *Id.*; Margulyan Decl. Ex. B 7, ECF No. 246-2.

While this Court assumes the Trustee's factual allegations are true, it's not clear that they give rise to the inference that Altemere knew about the payment order. "Personal legal issues" could refer to anything, and the Trustee cites no case law in the personal jurisdiction context to

support its argument that this language put Altemere on "inquiry notice." Reply 19. As for the Maes email, there are myriad reasons why she may not have responded to the email. Even assuming she did not respond because she already knew about the payment order, over two months passed between the transfer and the email. The Trustee provides no reason to believe that Maes knew of the payment order before the transfer occurred. This Court does not bury its head in the sand, though. It recognizes that the circumstances as a whole raise suspicion regarding Altemere's knowledge and intent in accepting the transfer. For example, Altemere was not formed until after the transfer. It also has the same director as CPAA, Masoud Emami, who is related to Stevanovich. Stevanovich was formerly a co-director of CPAA with Emami.

All this is to say that the question of personal jurisdiction is a difficult one. After "consider[ing] the record in its entirety and draw[ing] all inferences" in the Trustee's favor, this Court might be inclined to allow limited jurisdictional discovery. *B.D. ex rel. Myer v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 864 (7th Cir. 2024) (citation omitted). However, for the reasons discussed below, any jurisdictional discovery would be futile.

### III.    Piercing CPA's Corporate Veil

Altemere contends that the Trustee cannot succeed on the merits because he improperly seeks to pierce CPA's corporate veil, in violation of Illinois law. Its argument proceeds as follows. The IUFTA applies to transfers made "by a debtor." 740 Ill. Comp. Stat. 160/5(a) (West 2026). Stevanovich is the debtor, not CPA; CPA made the transfer to Altemere, so the transfer was not made by a debtor. The only way for the IUFTA to apply is if this Court pierced CPA's corporate veil and deemed it to be Stevanovich's alter ego.[5] Illinois law does not allow courts to pierce the

---

[5] The IUFTA defines "debtor" as "a person who is liable on a claim." 740 ILCS 160/1(f). To call CPA the debtor would technically be reverse veil piercing, as Altemere points out, because it would hold the corporation liable for the debt of its officer (Stevanovich). *See In re Wolf*, 644

corporate veil in supplemental proceedings like this one, so the IUFTA cannot apply, concludes Altemere.

Two of Altemere's premises require further consideration: first, that this Court does, in fact, need to pierce CPA's corporate veil, and second, that Illinois law prohibits piercing the veil in this proceeding. The Court evaluates each in turn.

The Trustee reasons that this Court need not pierce the corporate veil to void the transfer because it has already decided that the $50,000 monthly payment is Stevanovich's property. He points to this Court's August 21 payment order, which directed Stevanovich to pay the Trustee $33,000 a month based on Stevanovich's admission that the monthly payment was his "personal money to do with whatever [he] likes." Payment Order 2, ECF No. 226. The Court credited that statement in issuing the payment order, but the Trustee misconstrues the import of the payment order: once paid to Stevanovich, the management fee funds became Stevanovich's property and were available to pay down the judgment against him. But that does not mean that Stevanovich had a property right to that stream of payments in perpetuity.  The Court made no such holding.

Moreover, the Trustee's argument fails to recognize the fundamental differences between the payment order and the fraudulent transfer claim. When it issued the payment order, this Court had already ordered Stevanovich to pay $1.9 million to the Trustee. The payment order rejected Stevanovich's argument that he could not afford to satisfy the turnover order, recognizing that Stevanovich was, by his own admission, receiving a substantial monthly income. In issuing the payment order, the Court used its inherent equitable powers to enforce its earlier turnover order. However, in the fraudulent transfer claim, the Trustee brings a claim under Illinois law. The Court

---

B.R. 725, 748 (N.D. Ill. 2022). For ease of discussion, however, the Court refers to it as veil piercing.

must apply that law as written, and the law only applies to transfers by debtors. Technically speaking, CPA is not a debtor unless this Court declares that it is Stevanovich's alter ego. Veil piercing would be required for the IUFTA to apply.

The next question is whether this Court can pierce CPA's corporate veil. Altemere says no, pointing to two cases. First, in *Star Insurance Co. v. Risk Marketing Group*, the Seventh Circuit noted that "Illinois courts likely would not 'permit veil-piercing in supplementary proceedings under [735 Ill. Comp. Stat.] § 5/2–1402,'" of which this case is one. 561 F.3d 656, 660 (7th Cir. 2009) (citation omitted).[6] Altemere also cites *Professional Neurological Services, Ltd. v. City of Chicago Commission on Human Relations*, in which the Illinois Appellate Court held, based on Illinois's supplementary proceeding statute and Illinois case law, that courts may not pierce the corporate veil in supplementary proceedings. 264 N.E.3d 543, 550 (Ill. App. Ct. 2025).

The Trustee makes no argument to distinguish these cases, instead citing the Seventh Circuit in *Continental Casualty Co. v. Symons*: "a basic precept of fraudulent-transfer doctrine [is that] substance trumps form." 817 F.3d 979, 993 (7th Cir. 2016). However, in that case the court confronted the substance of a transfer, not of the parties' identities. It pointed to the IUFTA's language saying that a transfer can be "direct or indirect" in support. *Id.* The Trustee does not ask this Court to look beyond form to the substance of the transfer, but to look beyond corporate form to the substance of the actors. Only the first is permissible under Illinois law. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628–31 (7th Cir. 2002) ("Under Illinois law, a claim for a fraudulent transfer 'requires a debtor/creditor relationship.'" (citing *A.P. Props., Inc. v. Goshinsky*, 714 N.E.2d 519, 522 (1999))). Similar as though these circumstances may seem to

---

[6] This Court must follow Illinois law regarding the collection of money judgments. Fed. R. Civ. P. 69(a).

12

*Symons*, Illinois law provides special protection to corporations that can only be disregarded under specific circumstances.

The Trustee also argues that the $50,000 was Stevanovich's future income stream, which Stevanovich was entitled to transfer. But the cases the Trustee cites involved debtors who themselves were legally entitled to an income stream. *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 560 F.3d 717, 719 (7th Cir. 2009); *Bank of Am. V. WS Mgmt., Inc.*, 33 N.E.3d 696, 703, 724 (Ill. App. Ct. 2015). Stevanovich was not legally entitled to the income stream; CPA was. And without piercing the corporate veil, this Court cannot equate the two for purposes of enforcing the IUFTA.

Because this Court finds both that piercing CPA's corporate veil is necessary for the IUFTA to apply and that it may not pierce the veil in this proceeding, the Trustee cannot prevail on the merits. Accordingly, the motions for preliminary injunction and to set aside the transfer are denied.

Date: April 24, 2026

John J. Tharp, Jr.
United States District Judge

13